UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | Case No. 5:15-cr-00145-EJD |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO VACATE** |
| EDGARDO REYES, | Re: Dkt. No. 120 |
| Defendant. | |

Before the Court is Defendant Edgardo Reyes's 28 U.S.C. § 2255 motion to vacate his sentence. Motion to Vacate ("Mot."), Dkt. No. 120. Defendant argues his sentence should be vacated because his trial and appellate counsel were ineffective. Because Defendant cannot show deficiency and prejudice as required by *Strickland v. Washington*, 466 U.S. 668 (1984), Defendant's motion is denied.

### I.   BACKGROUND

#### A.   Factual Background

In January 2015, a confidential source of information ("the CS") contacted the Drug Enforcement Administration ("the DEA") with information regarding a person selling methamphetamine in multiple-pound quantities in Santa Clara County and Santa Cruz County. Presentence Investigative Report as to Edgardo Reyes ("PSR") ¶ 8, Dkt. No. 99. Investigating agents followed up and identified the person as Defendant. *Id.* At the direction of the DEA, the CS telephoned Defendant and arranged to purchase a pound of methamphetamine on January 30, 2015. *Id.* ¶ 9. This purchase was executed with the help of Defendant's nephew, Armando Solorio.

*Id.* ¶ 10. Between February 1 and February 17, the CS and Defendant regularly contacted each other to discuss details of another upcoming drug purchase. *Id.* ¶¶ 16-20. On February 17, the CS and Defendant spoke on the phone and finalized another purchase for the morning of February 20. *Id.* ¶ 21. At the purchase, agents arrested Defendant, his cousin Ricardo Reyes, and his nephew Mr. Solorio, finding 5,243 grams of actual methamphetamine in Mr. Solorio's car. *Id.* ¶ 23.

### B. Procedural Background

Defendant was indicted, along with Mr. Solorio and Mr. Ricardo Reyes, on March 4, 2015. Indictment, Dkt. No. 12. Defendant was charged with conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(C), and two counts of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *Id.* at 1:21-2:19.

On February 29, 2016, co-defendant Ricardo Reyes pleaded guilty to a Superseding Information charging him with illegal entry into the United States, (Min. Entry for Proceedings as to Ricardo Reyes, Dkt. No. 81), and co-defendant Solorio entered an open guilty plea to the three counts of the Indictment, (Min. Entry for Proceedings as to Armando Solorio, Dkt. No. 82).

On March 18, 2016, after a plea hearing, Defendant entered an open guilty plea as to all three counts. Min. Entry for Proceedings as to Edgardo Reyes, Dkt. No. 95; Transcript of Proceedings 3/18/16 ("Plea Tr."), Dkt. No. 133. On August 15, 2016, Defendant was sentenced to 154 months' custody for each count, to be served concurrently, followed by three years' supervised release. Transcript of Proceedings 8/15/16 ("Sentencing Tr.") 24:25-25:5, Dkt. No. 115.

Defendant filed a timely notice of appeal on August 23, 2016. Notice of Appeal, Dkt. No. 110. On April 24, 2017, the Ninth Circuit dismissed the appeal in light of Defendant's unconditional guilty plea. Opp. to Mot., Ex. 12, Dkt. No. 153-12. On July 16, 2018, Defendant, acting pro se, timely filed this motion to vacate his sentence. Mot. After extensions of time, the Government filed its response on February 20, 2020. Opposition to Motion ("Opp."), Dkt. No.

CASE NO. 5:15-cr-00145-EJD
ORDER DENYING DEFENDANT'S MOTION TO VACATE

2

153. Neither a reply nor any motion for extension of time has been filed by Defendant.

## II.     LEGAL STANDARD

### A.  28 U.S.C. § 2255 Motion

Section 2255 authorizes a prisoner to "move the court which imposed the sentence to vacate, set aside, or correct the sentence based on a violation of federal law." 28 U.S.C. 2255(a). Relief is limited to situations where "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Id.*; *see also United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010).

If error on these grounds is found, then "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Following the submission of a Section 2255 motion, the court must grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* The court need not hold an evidentiary hearing where the prisoner's allegations, when viewed against the record, either do not state a claim for relief or are so palpably incredible as to warrant summary dismissal. *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). Conclusory statements in a Section 2255 motion are "not enough to require a hearing." *United States v. Johnson*, 988 F.3d 941, 945 (9th Cir. 1993).

### B.  Ineffective Assistance of Counsel

The Sixth Amendment provides to a criminal defendant the right "to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. As such, to prevail on an ineffective assistance of counsel claim, a convicted defendant must show two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive

CASE NO. 5:15-cr-00145-EJD
ORDER DENYING DEFENDANT'S MOTION TO VACATE
3

the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. The inquiry is "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. The defendant must show both deficiency and prejudice; if an insufficient showing is made for one, the court need not consider the other. *Id.* at 697.

In assessing counsel's performance, the court applies an objective standard of reasonableness: "whether counsel's performance was reasonable considering all the circumstances." *Id.* at 688. Review is "highly deferential" because a fair assessment of counsel's performance requires that every effort be made to eliminate the "distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Due to the difficulties inherent in this evaluation, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* A defendant, thus, must overcome the presumption that, under the circumstances, the challenged action "might be considered sound … strategy" since "[t]here are countless ways to provide effective assistance in any given case." *Id.* Accordingly, counsel's judgments receive a "heavy measure of deference." *Id.* at 691.

In assessing whether the conduct was prejudicial, the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In a case involving a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Surmounting the *Strickland* standard is "never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

**III.     DISCUSSION**

Defendant claims both that his trial counsel and appellate counsel were ineffective. Mot. at 5-9. The specific claims in Defendant's motion overlap at times, but all rest upon assertions in the

CASE NO. 5:15-cr-00145-EJD
ORDER DENYING DEFENDANT'S MOTION TO VACATE

4

affidavit submitted by Defendant. Defendant first asserts that trial counsel failed to explain the facts and charges to him, failed to explain the consequences of his plea, including waiver of a right to appeal[1], failed to explain any sentencing enhancements, and misinformed Defendant regarding possible sentencing outcomes (collectively, the "Failure to Explain" claims). Mot., Ex. 1 ("Aff.") ¶¶ 7-8, 10-12, 14, 17, 22, Dkt. No. 120-1. Defendant also asserts that trial counsel failed to engage in plea negotiations after Defendant directed him to do so, failed to inform Defendant of a favorable plea, and instead advised an open guilty plea (collectively, the "Failure in Plea Negotiations" claims). *Id.* ¶¶ 9, 11, 15.

Defendant also asserts that appellate counsel failed to inform Defendant of his waiver of appellate rights. *Id.* ¶ 22. Further, Defendant asserts that appellate counsel has rendered ineffective assistance by failing (1) to file his appeal and (2) to keep him informed of the status of his appeal. *Id.* ¶¶ 18, 20. The Government argues that neither counsel was ineffective, and that Defendant has not shown prejudice under the *Strickland* standard. Opp. at 6.

### A. Ineffective Assistance of Trial Counsel

The Government asserts that Defendant's ineffective assistance of counsel claims are refuted by notes of trial counsel's six meetings with Defendant, (Opp., Ex. 4 (the "Notes"), Dkt. No. 153-4), as well as Defendant's sworn statements at the change of plea hearing, (Plea Tr).

"[T]he representations of the defendant … at such a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). In light of this, the Court first considers the Notes and Defendant's representations at his plea hearing to determine what was explained to Defendant.

---

[1] "[I]t is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects." *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005).

CASE NO. 5:15-cr-00145-EJD
ORDER DENYING DEFENDANT'S MOTION TO VACATE
5

### 1. Alleged Failure to Explain

The Notes show that trial counsel discussed detailed facts of the case with Defendant such as who gave the drugs to co-defendant Mr. Solorio, when and how Defendant met the CS, and how Defendant got involved in the particular deal. Notes at 2/25/15, 9/2/15, and 1/17/16. The Notes also include background mitigating facts about Defendant including any past jail time, his family, and what he did for a living. *Id.*

The Notes further demonstrate that trial counsel outlined the possible sentencing outcomes in detail for Defendant. Specifically, trial counsel explained three potential sentences to Defendant: 292 months if Defendant went to trial and was found to have lied; 235 months if he went to trial, truthfully testified, and was found guilty; and only 135 months if he accepted an open guilty plea and pursued a "safety valve" credit[2]. Notes at 9/2/15. These Notes contradict Defendant's claim that counsel told him if he entered an open guilty plea, "the most Petitioner was looking at in [trial counsel's] professional experience was 8 to 10 years because Petitioner did not have a criminal record." Aff. ¶ 8. One hundred thirty-five months, which is the lowest possible sentence reflected in the Notes, is 11.25 years.

At the change of plea hearing, Defendant was assisted by a certified Spanish language interpreter. Plea Tr. at 1:22, 2:10-12. Defendant was asked many questions to ensure that his plea was knowing, intelligent, free, and voluntary. Defendant acknowledged understanding that there was no promise as to the sentence that would be imposed in his case, (*id.* at 9:1-9), and confirmed that trial counsel had discussed and answered all questions regarding the sentencing guidelines as well as how they applied to this case, (*id.* at 11:18-12:3). Furthermore, the facts of the case were summarized by the Government during the plea hearing, whereupon Defendant confirmed that he heard and understood the facts, and that they were true, before entering his plea. *Id.* at 19:17-24:7. Trial counsel in particular took care that no fact which Defendant might later wish to contest

---

[2] There are often safety issues with a such credit, and Defendant chose not to pursue such a credit because he was "dreadfully afraid for his safety." Sentencing Tr. at 9:15-16.

CASE NO. 5:15-cr-00145-EJD
ORDER DENYING DEFENDANT'S MOTION TO VACATE

6

1   would be admitted at that point. *Id.* at 23:4-24-7.

2   Furthermore, Defendant was read and agreed to give up his rights, including a right to a
3   jury trial, the right to be represented at trial, to confront witnesses, among others. *Id.* at 17:7-
4   19:16. There was no mention, however, of Defendant's waiver of his right to appeal. *Id.* Indeed,
5   Defendant avers that "[h]ad Petitioner been aware that he waived his right to file a direct appeal,
6   Petitioner would not have filed a notice of appeal [or] hired an appellate counsel." Mot, Ex. 2
7   ("Mem. of P. & A.") 2, Dkt. No. 120-2; Aff. ¶ 22. This is concerning.

8   In light of the extensive notes taken by trial counsel, as wells as Defendant's statements at
9   the change of plea hearing, the Court finds Defendant's Failure to Explain claims are unsupported
10  by the record and not credible, with the single exception of the waiver of his right to appeal, which
11  is discussed further below in section III(A)(3) of this Order.

### 2. Alleged Failure in Plea Negotiations

13  The Government also points to the Notes taken on September 2 and September 17, in
14  arguing that "it is reasonable to infer from these notes that [trial counsel] was discussing the
15  benefits of a plea with [Defendant]," and that when "these notes are read in context with the
16  government's plea offer, it is clear that trial counsel advised [Defendant] about the possibility of
17  reaching a plea agreement with the government." Opp. at 17-18. In making this argument, the
18  Government relies on the declaration of Assistant United States Attorney Jeffrey Nedrow, who
19  avers that he sent a draft plea agreement to trial counsel "in approximately late August/early
20  September 2015." Opp., Exhibit 3, Declaration of Jeffrey Nedrow ("Nedrow Decl.") ¶ 2, Dkt. No.
21  153-3. Mr. Nedrow also avers that he "had numerous conversations about this case with [trial
22  counsel]," but that the "parties did not reach a disposition pursuant to the terms of this plea
23  agreement." *Id.* ¶¶ 2-3. Thus, it is reasonable to infer that [trial counsel] did engage in at least
24  some discussion of the plea offer with the Government, and Defendant's assertion to the contrary
25  is not credible.

26  The Notes from September 2 and September 17 also establish that trial counsel carefully

28  CASE NO. 5:15-cr-00145-EJD
    ORDER DENYING DEFENDANT'S MOTION TO VACATE
    7

1    reviewed the possible outcomes of a trial with Defendant. Notes at 9/2/15 and 9/17/15. Trial
2    counsel specifically noted a "5% [chance] at most of NG," and a "20% [chance] at most of [a]
3    hang [jury]." Notes at 9/17/15. This Court is mindful of the "strong presumption that counsel's
4    conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at
5    689. Given this presumption and the low chance of a favorable outcome at trial, this Court finds
6    that trial counsel was not deficient in advising an open guilty plea.
7        Lastly, Defendant asserts that "Counsel never mentioned about [sic] the plea negotiation
8    had a favorable plea." Aff. ¶ 9. "[A]s a general rule, defense counsel has the duty to communicate
9    formal offers from the prosecution to accept a plea on terms and conditions that may be favorable
10   to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). The Government argues that the
11   Notes taken on September 2 "establish that [trial counsel] discussed the plea agreement … with
12   [Defendant]" because they "track the proposed guideline calculation in the government's draft
13   plea agreement" and when "read in context with the government's plea offer, it is clear that trial
14   counsel advised [Defendant] about the possibility of reaching a plea agreement with the
15   government." Mot. at 16-17 (citing Notes at 9/2/15).
16       Although there may be some evidence to infer that trial counsel discussed the
17   Government's plea offer with Defendant, the Court disagrees that this is established. Certainly,
18   Defendant's assertions, even in light of counsel's Notes, are not "wholly incredible" so as to merit
19   summary dismissal. *See Blackledge*, 431 U.S. at 73–74. Accordingly, although the record is
20   unclear on this matter, the Court assumes *arguendo* that the Government's offer of August /
21   September 2015 was not communicated to Defendant and proceeds to analyze prejudice below.
22       **3. Prejudice**
23       As discussed above, the record lacks sufficient information to determine whether counsel
24   (1) explained to Defendant that a guilty plea would result in the waiver of certain appellate rights
25   and (2) conveyed the Government's plea offer to Defendant. The Court assumes without deciding
26   that counsel committed these errors, and turns next to whether Defendant was prejudiced by them.
27
28   CASE NO. 5:15-cr-00145-EJD
     ORDER DENYING DEFENDANT'S MOTION TO VACATE
                                              8

As previously stated, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Defendant avers that, but for trial counsel's errors, he "would have proceeded to trial or would have informed the Court that [trial counsel] had refused to engage in plea negotiations in an attempt to obtain a favorable plea," Aff. ¶ 23, and that "likely [Defendant] would have ended with a more favorable plea with less jail time," *id.* ¶ 24. These claims of prejudice are not credible given the record.

The Notes show that as early as May 2015, which was before any plea offer from the Government, Defendant "d[id] not want to go to trial," and "[w]ant[ed] to get the lowest possible sentence." Notes at 5/19/15. Additionally, Defendant was asked at the plea hearing whether he was "pleading guilty to the three charges, freely and voluntarily, of [his] own free will," and he answered "Yes." Plea Tr. at 12:14-17. He was further asked whether he was pleading guilty "because, in truth of fact, [he was] guilty of each of the charges," and he answered "Yes." *Id.* at 12:18-20. Finally, Defendant was asked whether he was "pleading guilty in this case to these charges because it [was] in [his] own best interests to do so," and he answered "Yes." *Id.* at 13:1-4. As previously mentioned, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 73–74 (1977). Because Defendant was already predisposed against going trial in May of 2015, and in considering his statements at the plea hearing, the Court finds that there is no reasonable probability that, but for trial counsel's alleged errors, Defendant would have, in fact, gone to trial.

Furthermore, any assertion that Defendant was prejudiced by counsel's failure to inform him of his appeal rights is belied by his admissions at the plea hearing. For one thing, Defendant was asked whether he understood his right against self-incrimination, to which he answered yes, and was asked "and do you give up that right?" to which Defendant answered "Yes." Plea Tr. at 19:6-16. As previously mentioned, the Government then recited the facts to underlying the Defendant's charges, and Defendant testified that the facts recited were true and correct. *Id.* at

CASE NO. 5:15-cr-00145-EJD
ORDER DENYING DEFENDANT'S MOTION TO VACATE

9

1  24:5-7. In light of Defendant's knowing waiver of his right to self-incrimination and admission to
2  the facts underlying the charges, it is clear that Defendant did not have any basis for a successful
3  appeal. Thus, there is no reasonable probability that he was prejudiced by trial counsel's failure to
4  inform him of the waiver of his appeal rights.

Finally, Defendant has not shown he was prejudiced by trial counsel's alleged failure to convey the Government's offer.  This is because the Government's proposed plea agreement contained a guideline calculation identical to the trial counsel's own estimate, and identical to the calculation arrived at by this Court during Defendant's sentencing hearing. *Compare* Nedrow Decl., Attachment 1 ¶ 7 *with* Notes at 9/2/15 *and* Sentencing Tr. at 3:9-20.  Moreover, the Government's offer was *worse* than Defendant's open guilty plea in at least one aspect. If Defendant had accepted the Government's offer, he would have promised "not ask for any other adjustment to or reduction in the offense level or for a downward departure from the Guidelines range as determined by the Court." *Id.* ¶ 7. In contrast, by entering an open guilty plea, Defendant's trial counsel was able to argue for a downward variance, arguing for a variance from the lower end of 168 down to 72 months. Defendant's Sentencing Memorandum 2, Dkt. No. 101. Trial counsel was able to again argue for a downward variance at the sentencing hearing. Sentencing Tr. Therefore, there is no reasonable probability that, but for trial counsel's alleged errors, Defendant would have "ended with a more favorable plea with less jail time."

The Court finds that Defendant has failed to establish he was prejudiced by trial counsel's allegedly deficient performance.

### B. Alleged Ineffective Assistance of Appellate Counsel

The Court next turns to Defendant's claim that appellate counsel was ineffective. Defendant claims that appellate counsel completely abandoned him during the appellate process, including not filing an appeal when directed. Aff. ¶¶ 18, 20.

However, contrary to Defendant's assertion, an appeal had indeed been filed by appellate counsel. Opp., Exhibit 9 ("Appellate Brief"). The Ninth Circuit reviewed the appeal and dismissed

CASE NO. 5:15-cr-00145-EJD
ORDER DENYING DEFENDANT'S MOTION TO VACATE
10

it "in light of Edgardo Reyes's unconditional guilty plea." Opp., Exhibit 12 ("No. 16-10373 Order"). Therefore, any purported deficiency in appellate counsel's representation did not cause Defendant prejudice.

## IV. CONCLUSION

For the above reasons, Defendant has failed to meet his burden under the *Strickland* standard. Accordingly, Defendant's Motion to set aside, vacate, or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED.** A certificate of appealability is DENIED because Defendant has not made a substantial showing of the denial of a constitutional right.

**IT IS SO ORDERED.**

Dated: December 7, 2020

EDWARD J. DAVILA
United States District Judge

CASE NO. 5:15-cr-00145-EJD
ORDER DENYING DEFENDANT'S MOTION TO VACATE
11